CARL S. CHAMP

*v.*

JOHN R. McGHEE, *Police Judge, etc.*

(No. 14841)

GLADYS S. RADFORD

*v.*

JOHN R. McGHEE, *Police Judge, etc.*

(No. 14946)

Decided September 23, 1980.

*William J. Akers, Michael F. Gibson* for petitioners.

*J. W. Feuchtenberger* for respondent.

NEELY, CHIEF JUSTICE:

Carl S. Champ and Gladys S. Radford, in separate petitions for writs of prohibition that have been consoli-

dated for decision, seek to prohibit prosecutions against them for their alleged violations of municipal ordinances of the City of Bluefield, until they are afforded a jury trial as provided by *W. Va. Const.*, Art. III, § 14. Relators contend that § 60 of the *Code of Ordinance,* City of Bluefield, which provides that "no jury shall be allowed in any trial in said court for the violation of any ordinance of said city," is unconstitutional.

Carl S. Champ was arrested on 13 March 1980 and charged with violating two municipal ordinances which respectively prohibit appearing in a public place in a state of intoxication and driving under the influence of intoxicating liquor. Gladys S. Radford was arrested on 15 June 1980 and charged with: appearing in public in a state of intoxication; carrying a dangerous and deadly weapon; driving while under the influence of intoxicating liquor; and, failing to maintain control of her motor vehicle. The crimes with which relators are charged have sentences which include possible incarceration. Both relators requested a trial by jury which was denied under § 60 of the *Code of Ordinance,* City of Bluefield.

I

While the Federal *Constitution* allows no constitutional right to a jury for "petty offenses," *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), *Cheff v. Schnackenberg,* 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed. 2d 629 (1966), the West Virginia *Constitution* provides that a jury trial shall be granted in all trials of crimes and misdemeanors under art. 3, § 14. Our Court has established that our State *Constitution* may afford individuals a higher standard of protection than that available under the Federal *Constitution. Adkins v. Leverette,* 161 W.Va. 14, 239 S.E.2d 496 (1977). Our Court recently ruled in *Hendershot v. Hendershot,* ___ W.Va. ___, 263 S.E.2d 90, 95 (1980) that art. 3, § 14 prohibits imprisonment without a jury trial in criminal contempt proceedings because:

> [I]t can be seen that from the time this State was formed, the framers of the West Virginia Constitutions, the Legislature, and this Court

have been unanimous in the belief that under Article III, Section 14 of the West Virginia Constitution, the right to a jury trial is accorded in both felonies and misdemeanors where the penalty imposed involves any period of incarceration.[1]

Under art. 8, § 11 of the *W.Va. Const.*, the Legislature may provide for the establishment of municipal courts in incorporated cities. Municipalities are empowered by the Legislature to pass municipal ordinances which are not contrary to the *Constitution* and laws of this State and "to prescribe reasonable penalties in the form of fines, forfeitures and imprisonment in the county jail or the place of imprisonment in such municipality, if there be one, for a term not exceeding thirty days." *W.Va. Code*, 8-11-1 [1976].

## II

Respondent argued that the availability of a trial *de novo* in the circuit court satisfies the right to a jury trial since the accused may plead guilty or *nolo contendere* without participating in the trial process and demand an appealable sentence under *W.Va. Code*, 8-34-1 [1969][2]. We find this a persuasive argument with regard to prosecutions without the possibility of a jail term or where the court indicates in advance that a conviction will not result in incarceration. However, the law is designed to protect against abusive and capricious action on the part of those in authority; it protects against the worst and not the best public servants. If it could be presumed that all municipal courts will be staffed by qualified, objective, and temperate judicial officers, the argument

---

[1] This writer's views regarding the right to a jury trial for criminal contempt expressd in his dissent to *Hendershot v. Hendershot, supra* have not changed, but that opinion is the law and valid precedent until changed.

[2] Respondent also argued that the Supreme Court's endorsement of the two-tier court system in *Ludwig v. Massachusetts*, 427 U.S. 618 (1976) proved the constitutionality of the system; however, the Massachusetts *Constitution*, like the Sixth Amendment to the United States *Constitution*, distinguishes between petty offenses and other offenses.

that a trial *de novo* in the circuit court with a jury satisfies the constitutional requirement might be well taken. But we can make no such assumption about the judiciaries of our municipalities, although in many cities the personnel are quite outstanding.

Mechanically, it is quite oppressive to appeal a jail sentence to the circuit court.[3] While a person might be willing to accept an outrageous fine because it would cost him more in terms of time and money to appeal than the fine is worth, almost no one would go to jail unjustly. Once a person is convicted of a misdemeanor and sentenced to jail, he must then post an appeal bond which, if cynically manipulated, can defeat his appeal. Although there are remedies available through habeas corpus to secure an indigent a recognizance bond, most indigents are ignorant of the process and will languish in jail for want of a surety. While a competent municipal court will always grant a recognizance bond to resident indigents, the municipal court which wishes to punish a

---

[3] Justice Stevens, in his eloquent dissent in *Ludwig, supra* in which he was joined by Justices Brennan and Marshall, argued:
   A defendant who can afford the financial and psychological burden of one trial may not be able to withstand the strain of a second. Thus, as a practical matter, a finding of guilt in the first-tier proceeding will actually end some cases that would have been tried by a jury if the defendant had the right to waive the first-tier proceeding. And since the nonjury trial is less expensive and time consuming, the State receives the benefit of an expedited disposition in such a case. The Court quite properly does not rely on any such justification because, if valid, it would justify the complete elimination of jury trials.
   There are several reasons why I cannot accept the Court's naive assumption that the first-tier proceeding is virtually meaningless. If it is meaningless for the defendant, it must be equally meaningless for the Commonwealth. But if so, why does the Commonwealth insist on the *requirement* that the defendant must submit to the first trial? Only, I suggest, because it believes the number of jury trials that would be avoided by the required practice exceeds the number that would take place in an optional system. In short, the very purpose of the requirement is to discourage jury trials by placing a burden on the exercise of the constitutional right.

   *Ludwig, supra* 427 U.S. at 435.

defendant notwithstandng his right to appeal will find the bond technique most satisfactory.

### III

This is not to say that a defendant cannot be sentenced to jail without a jury trial; it is to say, however, that any defendant in jeopardy of incarceration must affirmatively waive his right to a jury in writing before he may be tried and sent to jail without one. Similarly, if the judge signifies in advance of trial that the matter is exclusively administrative, such as a parking fine, and that notwithstanding provisions in the ordinance which permits a jail sentence, he will under no condition impose one, then the trial may proceed without a jury.

While violations of the public ordinances of municipalities are strictly criminal in nature since they are not private wrongs, *Charleston v. Beller*, 45 W.Va. 44, 30 S.E. 152 (1898), the bulk of the crimes considered by municipal courts concern minor traffic violations. Recognizing that the framers of the West Virginia *Constitution* could not have contemplated the growth of the municipal court's docket caused by the advent of automobiles, and remembering Mr. Chief Justice John Marshall's admonition that "we must never forget, that it is *a constitution* we are expounding," *McCulloch v. Maryland*, 4 Wheat. 316, 407, 4 L.Ed. 579 (1819), we do not require jury trials for every misdemeanor, but only for those crimes which carry the possibility of *any incarceration*. If a jury trial were required for every misdemeanor under a literal reading of the *Constitution*, the validity of a 50¢ parking violation could conceivably be an issue to be determined by twelve jurors. In refusing to find an absolute right to a jury trial for all crimes and misdemeanors, we recognize that there is a significant difference between a fine and imprisonment.

It being constitutionally mandated that jury trials must be available at the municipal court level, we direct the municipal courts to provide the proper machinery for summoning a jury. In that regard we note that a six-man jury satisfies the constitutional mandate in magis-

trate court since it was provided for in art. VIII, § 10 and in *W.Va. Code*, 50-5-8 [1978], but in municipal court a full twelve-man jury will be required since "[t]rials of crimes and misdemeanors, *unless herein otherwise provided*, shall be by a jury of twelve men." [emphasis added], art. 3, § 14, *W.Va. Const.*

The Court recognizes that frequently serious misdemeanors are handled by the municipal courts; however, there is always concurrent jurisdiction for these offenses in the State magistrate courts. Since the State *Constitution* provides for a jury of six in magistrate court, and further provides the funds for paying jurors in magistrate court, the city constabularies can elect to secure a State warrant and prosecute in magistrate court where there is appropriate machinery for securing a jury. As this Court's administrative rules requiring that a magistrate be available in every county at all times of the day and night provide, at least theoretically, an appropriate judicial officer, there is no violence done to the fair but efficient administration of justice by our holding today.

Since the charges against the relators do involve possible incarceration, the writs of prohibition prayed for are granted until such time as they are offered a trial by jury.

*Writ awarded.*