369 S.E.2d 888

**James Wesley ROBERTSON and Wesley Neal Robertson**

v.

**Honorable Jay GOLDMAN, Charleston Municipal Judge, and Connie Felty, Deputy Clerk of the Municipal Court of the City of Charleston.**

No. 18250.

Supreme Court of Appeals of West Virginia.

May 23, 1988.

Dissenting Opinion June 21, 1988.

Marye L. Wright, Charleston, for petitioners.

John M. Charnock, Jr., City Atty., Charleston, for respondents.

McGRAW, Justice:

This is an original petition for writs of mandamus and prohibition. The Petitioners are James Wesley Robertson, who was arrested for shoplifting, and Wesley Neal Robertson, who posted a cash bond to secure James' release. The Respondents are Jay Goldman, a Charleston Municipal Judge, and Connie Felty, a Deputy Clerk of the Municipal Court. The Petitioners pray that the Respondents be required to return the cash bond and cease incarcerating criminal defendants solely because they cannot post a cash bond.

Petitioner James Robertson was arrested on December 18, 1987, and charged with a misdemeanor, first offense shoplifting. The maximum penalty for such a conviction under Charleston City Code § 18–58(e)(1) (1975) is a fine of two hundred fifty dollars.[1] The Petitioner was informed that he must post a $500.00 real estate bond or a $305.00 cash bond in order to be released.[2]

---

1. This penalty is identical to West Virginia Code § 61–3A–3 (1984 Replacement Vol.). Another statutory provision, West Virginia Code § 8–11–1 (Supp.1987), authorizes a municipal governing body to make and pass all needful ordinances not contrary to the Constitution and laws of the State and to prescribe reasonable penalties for their violation.

2. West Virginia Code § 62–1C–17 (1984 Replacement Vol.) provides that bail for municipal offenses generally follows the rules applicable to magistrates. In cases punishable only by fine, bail can not be set at more than the maximum amount of the fine and applicable court costs. W.Va.Code § 50–2–3 (1986 Replacement Vol.). While no breakdown of applicable court costs for this case is provided to us, it appears that bond amounts of $305.00 and $500.00 are in excess of the maximum allowed by Code § 50–2–3.

He informed the Respondent Deputy Clerk he was unable to post bond in any amount, and he was, therefore, incarcerated.

Petitioner Wesley Neal Robertson posted $305.00 cash appearance bond the next morning, and the other Petitioner was released. Counsel was later appointed for the defendant Petitioner. On January 14, 1988, the Petitioner was found guilty of the shoplifting charge and fined $205.00. Counsel informed the Respondent Judge that an appeal would be taken and asked that the $305.00 appearance bond be returned. The Respondent Judge replied that the appearance bond posted by Petitioner Wesley Neal Robertson would only be returned when Petitioner James Robertson posted a $205.00 appeal bond.

The Petitioners contend that the incarceration of Petitioner James Robertson because of his inability to post bond violated his constitutional rights and that the post-conviction retention of the $305.00 cash appearance bond posted by Petitioner Wesley Neal Robertson in lieu of posting an appeal bond was unauthorized by law.

## I.

No jail time was involved in the maximum penalty faced by the Petitioner herein if convicted of first offense shoplifting; yet, because he was unable to post bond, the Petitioner was incarcerated the night of December 18, 1987. The United States Supreme Court has held that it is unconstitutional to hold a prisoner longer than his maximum sentence because of his inability to pay fines or court costs, *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), or to incarcerate a defendant convicted of an offense which did not otherwise carry a jail term in order to have him "satisfy" his fine, *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971). Both of these cases rely on the reasoning of the landmark decision *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), which required trial transcripts for indigent criminal appellants. Because our ruling today is based on these same principles, we quote at some length from that decision.

Providing equal justice for poor and rich, weak and powerful alike is an age-old problem. People have never ceased to hope and strive to move closer to that goal. This hope, at least in part, brought about in 1215 the royal concessions of Magna Charta: "To no one will we sell, to no one will we refuse, or delay, right or justice.... No free man shall be taken or imprisoned, or disseised, or outlawed, or exiled, or anywise destroyed; nor shall we go upon him nor send upon him, but by the lawful judgment of his peers or by the law of the land." These pledges were unquestionably steps toward a fairer and more nearly equal application of criminal justice. In this tradition, our own constitutional guaranties of due process and equal protection both call for procedures in criminal trials which allow no invidious discriminations between persons and different groups of persons. Both equal protection and due process emphasize the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, "stand on an equality before the bar of justice in every American Court."

Surely no one would contend that either a State or the Federal Government could constitutionally provide that defendants unable to pay court costs in advance should be denied the right to plead not guilty or to defend themselves in court. Such a law would make the constitutional promise of a fair trial a worthless thing. Notice, the right to be heard, and the right to counsel would under such circumstances be meaningless promises to the poor. In criminal trials a State can no more discriminate on account of poverty than on account of religion, race, or color. Plainly the ability to pay costs in advance bears no rational relationship to a defendant's guilt or innocence and could not be used as an excuse to deprive a defendant of a fair trial.

*Griffin*, 351 U.S. at 16–17, 76 S.Ct. at 589–590 (footnotes and citations omitted).

The law is the same in West Virginia. The right to the equal protection of the laws guaranteed by our federal and state constitutions "blocks unequal treatment of criminal defendants based on indigency." *Martin v. Leverette,* 161 W.Va. 547, 550, 244 S.E.2d 39, 41 (1978). Indeed, we have previously observed in a case involving a "peace bond," which we said was analogous to a bail bond, that if the appellant "was placed in jail because he was an indigent and could not furnish [bond] while a person who is not an indigent can avoid being placed in jail by merely furnishing the bond required, he has been denied equal protection of the law." *Kolvek v. Napple,* 158 W.Va. 568, 572, 212 S.E.2d 614, 617 (1975).

In addition to the constitutional considerations already discussed, the Petitioner had a statutory right to be admitted to bail. W.Va.Code § 62–1C–1 (1984 Replacement Vol.). Further, "[a]n indigent person who the court is satisfied will appear as required shall not be denied bail because of his inability to furnish recognizance." W.Va.Code § 62–1C–4 (1984 Replacement Vol.). The Charleston Municipal Court was on notice that the Petitioner was an indigent. The Respondents do not contend that they had reason to fear that the Petitioner would not appear as scheduled. It is uncontroverted that, but for his indigency, the Petitioner would never have been jailed, since the offense with which he was charged did not carry a penalty of incarceration. Therefore, the Charleston Municipal Court's practice of jailing indigents solely because they are unable to post bond is violative of both statutory and constitutional provisions, and must cease.

## II.

The $305.00 cash bond posted by Petitioner Wesley Neal Robertson was an appearance bond. West Virginia Code § 62–1C–2 (1984 Replacement Vol.) defines bail, in part, as "security for the appearance of a defendant to answer to a specific criminal charge." Further, "[w]hen the condition of the bond has been satisfied ... [the judge] shall exonerate the surety and release any bail." W.Va.Code § 62–1C–12 (1984 Replacement Vol.). No one questions that all appearances were made as required in this case or that a judgment has been rendered and a fine imposed.

The Respondents argue that West Virginia Code § 62–1C–6 (1984 Replacement Vol.) authorizes a court to continue initial bail pending appeal after conviction. While it is true that statute permits continuing bail under appropriate conditions, such is not the case here. First, the Respondents' argument ignores completely the clearly stated requirement of Section 12 to release any bail when the bond condition is satisfied. The argument also ignores the nature of bail bond as a contract between the state and the surety, whose liability cannot be extended beyond the terms of the bond without his consent, Annotation, *Bail: Duration of Surety's Liability on Pretrial Bond,* 32 A.L.R. 4th 504, 509 (1984). Here, the contract was between the City of Charleston and Petitioner Wesley Neal Robertson, who specifically requested the return of his deposit and refused to give his consent to extend his liability.[3] When final judgment has been entered against a criminal defendant, the condition of an appearance bond has been satisfied, and the surety has a right to be exonerated and have any bail deposit returned. The Respondent Judge erred in denying Petitioner Wesley Neal Robertson's request that the cash bond he posted be returned.

## III.

Petitioner James Robertson contends that he should be allowed to pursue his appeal in the circuit court without posting bond. The Appellant has a statutory right to appeal his conviction de novo to the circuit court. W.Va.Code § 8–34–1 (1984 Replacement Vol.). That statute requires

---

**3.** The Respondents' argument also does little to insure the proper functioning of the justice system. While there might be some concern that a criminal will flee pending appeal in order to avoid incarceration, no potential jail sentence is involved in the instant case. *Cf. Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130.

the posting of "an appeal bond with surety deemed sufficient in a penalty double the amount of fine and costs." *Id.*

We have previously recognized that an indigent's right to appeal from the decision of a municipal court can be defeated by manipulating this "appeal bond"[4] requirement. *Champ v. McGhee*, 165 W.Va. 567, 270 S.E.2d 445 (1980). Following the reasoning in *Griffin*, the Supreme Court of Oregon ruled that a statute requiring the filing of a bond as a condition to the right of appeal was unconstitutional under the federal equal protection clause as applied to an indigent defendant. *Barber v. Gladden*, 210 Or. 46, 298 P.2d 986 (1956). The concept of equal protection of the laws is inherent in article three, section ten of the West Virginia Constitution, and the scope and application of this protection is coextensive or broader than that of the fourteenth amendment to the United States Constitution. *State ex rel. Harris v. Calendine*, 160 W.Va. 172, 233 S.E.2d 318 (1977).

If our statute rigidly required the posting of a cash appearance bond for the perfection of an appeal, it would be unconstitutional as applied to indigents. Under our rules of statutory construction, however, "where a statute is susceptible of more than one construction, one which renders the statute constitutional, and the other which renders it unconstitutional, the statute will be given the construction which sustains constitutionality." *State ex rel. Frieson v. Isner*, 168 W.Va. 758, 778–79, 285 S.E.2d 641, 655 (1981). The word "surety" need not mean anything more than "a pledge or other formal engagement given for the fulfillment of an undertaking." *Webster's Third New International Dictionary* 2300 (1970). Therefore, the requirement of Code § 8–34–1 that an "ap-

peal bond with surety deemed sufficient" be entered into before a defendant sentenced in a municipal court may be allowed an appeal de novo to the circuit court shall be interpreted to allow a recognizance where appropriate or where the defendant is an indigent.[5] By requiring a written undertaking from an indigent defendant that he will appear as required in court to prosecute his appeal, rather than requiring cash bond, a lower court protects the integrity of the judicial process without denying the indigent's right to appeal.

## Conclusion

Because discrimination on the basis of poverty denies the equal protection of the laws to criminal defendants, a writ of prohibition is granted ordering the Respondents to cease their practice of jailing indigents facing charges which do not carry a potential jail term soley because they are unable to post bond. Writs of mandamus are also granted ordering the Respondents to return the $305.00 cash bond posted by Petitioner Wesley Neal Robertson and to allow Petitioner James Wesley Robertson's appeal de novo to the circuit court without requiring the posting of cash bond.

Writs as Moulded Granted.

NEELY, Justice, dissenting:

I dissent because the majority rule leaves no room for a court to question the financial priorities of an "indigent" defendant. Once the defendant signs a pauper's affidavit, he is automatically granted the right to an appeal bond on his own recognizance.

In the real world, every individual has his own financial priorities. First for almost everyone are expenses for shelter, food, clothing and transportation to and

---

4. Although the term "appeal bond" is often used in this situation, it is probably best reserved for civil cases, in which such bond is posted to assure that costs are paid by an appellant who "fails to prosecute the appeal with effect." *Black's Law Dictionary* 89 (5th ed. 1979). The bond posted in a criminal case, on the other hand, is conditioned on the defendant's appearance in the appellate court as required. W.Va. Code § 50–5–13.

5. West Virginia Code § 50–5–13 (1986 Replacement Vol.) deals with the requirements for perfecting an appeal from magistrate's court. This statute, however, specifically states that the bond may be on the defendant's own recognizance, and, therefore, requires no construction to sustain its constitutionality in this regard.

from work (if there is a job) and to the grocery. These are the necessities of life. After these expenses, if there is money left, some will spend it on a television or to go to the movies, others will spend it on furniture or nice clothes, and others will spend it on alcohol and tobacco. Many defendants who themselves are technically indigent can get help from family or friends.[1] My concern is that courts not be last on this list of priorities. If this is permitted, it makes a mockery of our municipal courts and will flood our circuit courts with trials *de novo* which do not necessarily have any merit.

The bond requirement for an appeal to circuit court serves two purposes. Most directly, it is designed to ensure the once-convicted defendant's appearance in the appellate court. Indirectly, the bond requirement makes it less likely that a defendant will take an appeal that is totally lacking in merit. For a working man of limited means, posting an appeal bond and missing work for the appeal itself are not likely done unless the defendant feels he has some basis for the appeal. However, a defendant who makes less money or receives government assistance, and who takes the pauper's oath, has but to sign his name to perfect an appeal. What defendant of any intelligence will not follow a path of least resistance and take an appeal, regardless of its basis? And how seriously will defendants, particularly professional defendants, treat proceedings in municipal courts when they know they automatically have another free shot? We must strike a balance so that indigents are not denied equal protection due to their poverty, but with due regard for the needs of the administration of justice and the fair treatment of non-indigent defendants of modest means.

In this case, when the defendant's liberty was at stake, his family found the means to post his bond. Yet when it came time to post an appeal bond, the defendant insists he has no access to funds for the bond.

I do not believe that the "surety deemed sufficient" clause of the appeal bond statute should automatically be deemed to mean personal recognizance in every case where the defendant has filed a pauper's affidavit. Rather, after a conviction, I would require the judge below to make an inquiry into defendant's means, including family sources, and into his financial priorities. The posting of an appeal bond should come after the necessities discussed *supra,* but before any other voluntary expenses.

---

**1.** Should an eighteen year old with wealthy parents be allowed to claim indigency and force the state to bear the cost of his appeal?