564 S.E.2d 398

Gary W. FRANTZ, d/b/a Frantz Lumber Company, Gary W. Frantz, d/b/a Tri–State Logging and Tri–State Logging, Inc. Petitioner Below, Appellant,

v.

Joseph M. PALMER, State Tax Commissioner of the State of West Virginia Respondent Below, Appellee.

No. 29178.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 2001.

Decided Oct. 29, 2001.

Dissenting Opinion of Justice Davis Nov. 14, 2001.

Thomas A. Vorbach, Paul L. Hicks, Ancil G. Ramey, Steptoe & Johnson, Morgantown, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Stephen Stockton, Senior Assistant Attorney General, Charleston, for the Appellee.

ALBRIGHT, Justice.

Appellant Gary W. Frantz, d/b/a Frantz Lumber Company, Tri–State Logging, and Tri–State Logging, Inc. (hereinafter "Taxpayer"), challenges the July 26, 1999, order of the Circuit Court of Kanawha County dismissing his appeal from an administrative ruling of Appellee Joseph M. Palmer, the State Tax Commissioner (hereinafter "Tax Commissioner"). As grounds for the appeal, Taxpayer challenges the constitutionality of West Virginia Code § 11–10–10(d) (1986) (Repl.Vol.1999) insofar as that statutory provision reposes sole discretion in the Tax Commissioner with regard to issuance of a certification of adequate assets sufficient to secure performance in lieu of the appeal bond otherwise required by the statute. Upon careful examination of the statutory provisions, we find that West Virginia Code § 11–10–10(d) violates our constitutional guarantee of open access to the courts [1] by omitting any provision for judicial review of the Tax Commissioner's discretion concerning the issuance of a certificate of adequate assets. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

## I. Factual and Procedural Background

In 1990, the Tax Commissioner assessed Taxpayer, a Maryland resident who is in the timber business, for certain unpaid business and occupation,[2] severance, and franchise taxes covering the period of 1986 through 1989. The amount of the assessment was $17,362.23 with additions of $4,338,78 and interest of $2,636.83 for a total amount owing of $24,337.84. Taxpayer timely filed a petition seeking a reassessment of the taxes and an administrative hearing was held on August 20, 1991. The ruling relative to this administrative proceeding was issued on August 26, 1998—more than seven years after the hearing.[3] In issuing its ruling, the Tax Commissioner affirmed the tax liabilities assessed but waived in full all the additions to the tax including the interest figure.

On October 22, 1998, Taxpayer timely filed an appeal from the Tax Commissioner's decision in accordance with the provisions of

1. *See* W.Va. Const. art. III, § 17.

2. The business and occupation tax was repealed in 1989 with regard to timbering. *See* W.Va. Code § 11–13–2a (1985) (repealed by 1989 W.Va. Acts, 1st Ex.Sess., ch. 2).

3. In explanation, the Tax Commissioner suggested that Taxpayer's request to submit documentation in support of his position following the administrative hearing may have contributed to the delayed ruling.

West Virginia Code § 11–10–10.[4] As part of the provisions governing the appeal, Taxpayer was required within ninety days of the filing of the petition to file a cash or corporate surety bond or, alternatively, to seek a certificate from the Tax Commissioner dispensing with such bonds based on sufficient proof of assets. *See* W.Va.Code § 11–10–10(d). While Taxpayer undertook efforts to obtain a corporate surety bond,[5] the surety company contacted was unwilling to issue a bond based on the fact that Taxpayer's business records for the relevant time period had been destroyed due to the flooding of his Maryland residence in 1995.

Following the passage of the ninety-day period for filing the appeal bond, the Tax Commissioner filed a motion to dismiss [6] the appeal, citing lack of jurisdiction for Taxpayer's failure to obtain the requisite appeal bond.[7] On April 15, 1999, Taxpayer filed a motion for leave to proceed without bond or alternatively, with a reduced bond. As exhibits to this motion, Taxpayer filed an affidavit setting forth in detail his unsuccessful efforts regarding securing a surety bond, as well as a financial statement offered to demonstrate the availability of personal assets sufficient to cover the amount of the tax assessment. The circuit court, upon its consideration of the various filings of the parties, ruled that Taxpayer's failure to file an appeal bond within the statutory requirements of West Virginia Code § 11–10–10(d) prevented it from hearing the appeal on jurisdictional grounds. Seeking to obtain an appeal on the merits of his case, Taxpayer asks this Court to reverse the lower court's ruling.

## II. Standard of Review

Our review of this matter is *de novo* consistent with our holding in syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), that "[w]here the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Plenary review is required in this case as issues of statutory interpretation as well as the constitutionality of West Virginia Code § 11–10–10(d) are presented.

## III. Discussion

### A. Undue Delay

While we find it unnecessary to resolve this case on grounds of delay, we wish to comment nonetheless on the lengthy period of time that ensued between the administrative hearing and the issuance of the Tax Commissioner's ruling. More than seven years transpired between the August 1991 administrative hearing and the Tax Commissioner's ruling in late August 1998. Tax decisions are governed by the requirement set forth in West Virginia Code § 11–10–9 (1978) (Repl.Vol.1999) that the tax commissioner's decision "shall" be provided in writing "within a reasonable time" after the administrative hearing takes place. *Id.* Rather than offering any explanation for the protracted delay that occurred in this case,[8] the Tax Commissioner chose instead to criticize Taxpayer for failing to initiate a writ of mandamus to prompt the issuance of a ruling. *See, e.g.,* Syl. Pt. 2, in part, *Kanawha Valley Transp. Co. v. Public Serv. Comm'n,* 159 W.Va. 88, 219 S.E.2d 332 (1975) ("If a decision is unduly delayed, a proceeding in mandamus may be instituted to compel a decision....").

---

4. Appeals taken from administrative tax decisions are required to be filed within sixty days of service of the ruling upon the taxpayer. *See* W.Va.Code § 11–10–10(a).

5. According to the affidavit of Gary W. Frantz, he contacted BGS & G Company who in turn contacted Travelers Casualty and Surety Company with reference to obtaining a surety bond.

6. According to the certificate of service, the Tax Commissioner served the motion to dismiss on Taxpayer on March 30, 1999. The motion, however, was not entered into the Kanawha County Circuit Court's file until July 26, 1999—the same date the circuit court's ruling was entered.

7. In its response to the petition for appeal filed on December 21, 1998, the Tax Commissioner raised as an affirmative defense the resulting lack of jurisdiction in the event Taxpayer failed to timely file an appeal bond as required by West Virginia Code § 11–10–10(d).

8. *See supra* note 3.

■ Among the list of guarantees set forth in article III, section 17 of our state constitution is the laudatory mandate that "justice shall be administered without ... delay." W.Va. Const. art. III, § 17. Just as circuit court judges "have an affirmative duty to render timely decisions on matters properly submitted within a reasonable time following their submission," Syl. Pt. 1, in part, *State ex rel. Patterson v. Aldredge,* 173 W.Va. 446, 317 S.E.2d 805 (1984), the obligation to act in a timely fashion is similarly imposed upon administrative bodies, as we recognized in syllabus point seven of *Allen v. State Human Rights Commission,* 174 W.Va. 139, 324 S.E.2d 99 (1984): "[A]dministrative agencies performing quasi-judicial functions have an affirmative duty to dispose promptly of matters properly submitted."

■ When a litigant asserts constitutional violations predicated on decisional delay, the inquiry becomes one of whether the litigant can establish that his ability to prepare or defend his case has been substantially prejudiced as a result of the delay. *See Allen,* 174 W.Va. at 157 n. 22, 324 S.E.2d at 117 n. 22 (discussing correlation between administrative promptness and procedural due process); *New York State NOW v. Cuomo,* 14 F.Supp.2d 424, 431 (S.D.N.Y.1998) (holding that administrative delay may rise to level of constitutional violation if substantive constitutional rights are violated), *order vacated on other grounds,* 261 F.3d 156 (2nd Cir.2001); *O'Keefe v. Murphy,* 38 N.Y.2d 563, 381 N.Y.S.2d 821, 345 N.E.2d 292, 294 (1976) ("[W]henever a delay in an administrative adjudication significantly or deliberately interferes with a party's capacity to prepare or to present his case, the right to due process has been violated"); *see generally* 2 Am. Jur.2d *Admin. Law* § 379 (1994). Taxpayer asserts that, due to the decisional delay, his ability to defend his position with regard to challenging the tax assessment has been prejudiced by the staleness of the evidence and the intervening flood-related destruction of his business records. Rather than ad-

dressing the effects of the delay on Taxpayer's appeal,[9] the Tax Commissioner observes only that Taxpayer has benefitted from the delay because he enjoyed the benefits of an interest-free loan of money otherwise owed.[10]

■ "Time limitations," as we recognized in *Allen,* "are frequently imposed by the Legislature in recognition of the need for expeditiousness." 174 W.Va. at 158, 324 S.E.2d at 119. In this case, the within a "reasonable time" period prescribed by the Legislature for the issuance of tax decisions was clearly exceeded by the Tax Commissioner. We would be hard pressed to find the existence of good cause with regard to the seven-year delay between the administrative hearing and the issuance of the decision at issue here. We admonish the Tax Commissioner to comply with the legislatively-selected time period for the issuance of tax decisions. *See* W.Va.Code § 11–10–9. Despite the availability of extraordinary relief as a means of seeking the issuance of delayed decisions, taxpayers should not have to resort to the judicial system to obtain a timely tax ruling.

## B. Constitutional Defects

To determine whether West Virginia Code § 11–10–10(d) violates the West Virginia Constitution, we examine the pertinent statutory provisions which require as follows:

within ninety days after the petition for appeal is filed, or sooner if ordered by the circuit court, the taxpayer shall file with the clerk of the circuit court a cash bond or a corporate surety bond approved by the clerk. The surety must be qualified to do business in this state. These bonds shall be conditioned that the taxpayer shall perform the orders of the court. The penalty of this bond shall be not less than the total amount of tax, additions to tax, penalties and interest for which the taxpayer was found liable in the administrative decision of the tax commissioner. **Notwithstanding the aforegoing and in lieu of such bond, the tax commissioner, in his dis-**

---

9. Because this appeal is predicated on issues of the lower court's jurisdiction, we do not address the merits of those prejudices Taxpayer asserts with regard to the issue of delay.

10. The administrative decision provided that no interest accrued for the period covering approximately six months after the hearing to the August 26, 1998, date of the Tax Commissioner's ruling.

cretion upon such terms as he may prescribe, may upon a sufficient showing by the taxpayer, certify to the clerk of the circuit court that the assets of the taxpayer subject to the lien imposed by section twelve of this article, or other indemnification, are adequate to secure performance of the orders of the court.

W.Va.Code § 11–10–10(d) (emphasis supplied). Taxpayer's challenge to this constitutional language arises from the legislative decision to grant the Tax Commissioner sole dispositional authority to dispense with the bond requirement. With this unfettered grant of discretionary power, Taxpayer maintains that the Legislature has violated our state constitution's guarantee of open access to the courts. W.Va. Const. art. III, § 17.

Taxpayer asserts that to repose unchecked power in the administrative body that is a party to the tax appeal necessarily works an injustice in those instances where the Tax Commissioner's discretion is employed to deny a taxpayer access to the judicial system. Furthermore, Taxpayer suggests that the circuit court, not the Tax Commissioner, should be vested with ultimate authority to modify or waive the bond required for an appeal under West Virginia Code § 11–10–10(d). We agree. An adverse party should not "hold the keys to the courthouse."

█ In the criminal context we have recognized that "[o]nce a person is convicted of a misdemeanor and sentenced to jail, he must then post an appeal bond which, if cynically manipulated, can defeat his appeal." *Champ v. McGhee*, 165 W.Va. 567, 570, 270 S.E.2d 445, 447 (1980). We believe that the case before us implicates the principle recognized in *Champ*. When one party may—by the unchecked exercise of discretion—prevent the right to judicial review belonging to an opposing party, as West Virginia Code § 11–10–10(d) currently allows, then the right of open access to the courts guaranteed by article III, section 17 of the West Virginia Constitution has been contravened.

Other courts, in reviewing their respective tax statutes, have similarly determined that

statutory provisions which deny a taxpayer's access to judicial review are unconstitutional. *See, R. Commun., Inc. v. Sharp*, 875 S.W.2d 314 (Tex.1994) (finding statutory enactment removing remedy of prepayment declaratory relief from tax assessment to be unconstitutional denial of open courts mandate of Texas constitution); *Jensen v. State Tax Comm'n*, 835 P.2d 965, 968–69 (Utah 1992) (holding that violation of Utah open courts provision results where taxpayer is unable to deposit full amount of taxes, interest, and penalties as required by statute as condition to appeal of tax assessment).

█ Accordingly, we hold that the statutory language of West Virginia Code § 11–10–10(d), which permits an administrative body to have ultimate discretionary authority on the critical issue of a bond or a substitute therefor,[11] required to perfect an appeal of that administrative body's decision to a circuit court, violates the open courts provision set forth in article III, section 17 of the West Virginia Constitution. That ultimate discretionary authority must be vested in the courts. Determining the sufficiency of an appeal bond or its alternatives is a judicial function and not an executive function.

█ Turning now to fashioning the limited relief required in this case, we heed the following axiom of statutory construction: "Acts of the Legislature are always presumed to be constitutional, and this Court will interpret legislation in any reasonable way which will sustain its constitutionality." *State ex rel. City of Charleston v. Coghill*, 156 W.Va. 877, 883, 207 S.E.2d 113, 118 (1973). Equally applicable is our recognition that

"[a] statute may contain constitutional and unconstitutional provisions which may be perfectly distinct and separable so that some may stand and others will fall; and if, when the unconstitutional portion of the statute is rejected, the remaining portion reflects the legislative will, is complete in itself, is capable of being executed independently of the rejected portion, and in all other respects is valid, such remaining por-

11. We are unaware of any other statute that reposes in any other administrative body similar discretion with regard to the requirement of an appeal bond.

tion will be upheld and sustained." Point 6, syllabus, *State v. Heston,* 137 W.Va. 375 [71 S.E.2d 481].

Syl. Pt. 4, *State ex rel. State Building Comm'n v. Bailey,* 151 W.Va. 79, 150 S.E.2d 449 (1966). Cognizant of our obligation to respect the legislative will and to uphold all constitutionally valid legislative provisions, we proceed to determine, to the greatest extent possible, the statutory provisions that may be sustained, and to identify, as narrowly as possible, the specific language that fails constitutional muster. *See* Syl. Pt. 1, in part, *State ex rel. Appalachian Power Co. v. Gainer,* 149 W.Va. 740, 143 S.E.2d 351 (1965) ("In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches.").

We perceive no problem with the provisions of West Virginia Code § 11–10–10(d) which permit the Tax Commissioner to examine whatever evidence the taxpayer presents regarding his sufficiency of assets to cover the amount of the tax assessment. Similarly we perceive no problems with authorizing the Tax Commissioner to certify that a taxpayer's assets are deemed sufficient to permit an appeal to proceed without a bond or with some other arrangements in lieu of bond, so as to permit the parties to proceed to the appeal by agreement on the issue of a bond or other security.

The language in West Virginia Code § 11–10–10(d) which is troublesome to this Court is the statutory clause permitting the Tax Commissioner **"in his discretion upon such terms as he may prescribe"** to grant or withhold approval of a Taxpayer's request to substitute taxpayer's property "or other indemnification" for the required appeal bond, as a condition of Taxpayer prosecuting an appeal of the Tax Commissioner's levy of taxes, penalties and interest.[12] W.Va.Code § 11–10–10(d) (emphasis supplied). Based on our conclusion that the courts, not the Tax

Commissioner, must be vested with the ultimate discretionary authority to fix the terms upon which an appeal bond may be waived or other property or indemnification substituted for the bond, this broad grant of discretion to the Tax Commissioner—and the Tax Commissioner alone—does not survive constitutional scrutiny.

Consistent with the position of the Tax Commissioner and the court below, we acknowledge that this Court has generally viewed compliance with statutorily-imposed deadlines for the posting of bonds to prosecute an action or perfect an appeal as jurisdictional in nature. *See Stevens v. Saunders,* 159 W.Va. 179, 220 S.E.2d 887 (1975) (affirming dismissal on statute of limitations grounds where cost bond not obtained until after period of repose had run), *superseded by statute as stated in Crawford v. Hatcher,* 804 F.Supp. 834 (S.D.W.Va.1992); *Gaines v. Hawkins,* 153 W.Va. 471, 170 S.E.2d 676 (1969) (applying statutory period for obtaining bond in connection with civil appeals); *Scott v. Coal & Coke Ry. Co.,* 70 W.Va. 777, 74 S.E. 992 (1912) (interpreting statutory provision regarding applicable period for perfecting civil appeals). None of those cases cited by the court below in support of its ruling, however, involve application of the statutory provision at issue in this case or raise the issue central to this case of a constitutional challenge to the statutory language vesting in an opposing party—a state administrative body—the final power to approve, modify, or excuse compliance with a bond requirement. In cases where statutory time periods for initiating litigation were relied upon to dismiss causes of action and the appellate courts subsequently determined that tolling statutes applicable to minors were unconstitutional, those cases were remanded despite the statute of limitations problem. *See, e.g. Whitlow v. Board of Educ.,* 190 W.Va. 223, 438 S.E.2d 15 (1993) (remanding case dismissed on statute of limitation grounds after determining that tolling statute was unconstitutional); *accord Strahler v. St. Luke's Hosp.,* 706 S.W.2d 7 (Mo.

---

12. We seek here to preserve and promote the separation of powers among the three branches of our state government, by limiting our action as narrowly as possible to the necessities created

by the constitutional deficiency identified in West Virginia Code § 11–10–10(d). *See* W.Va. Const. art. V, § 1.

1986); *Sax v. Votteler,* 648 S.W.2d 661 (Tex. 1983). For analogous reasons, our conclusion regarding the unconstitutionality of certain language found in West Virginia Code § 11–10–10(d) requires that Taxpayer and others affected by this language have a meaningful opportunity to pursue their appeals through the posting of bond or providing substitute property or indemnification in a manner consistent with the principles set forth in this opinion.

Accordingly, pending legislative attention to the defect we have found in West Virginia Code § 11–10–10(d), reposing sole discretional authority in the Tax Commissioner regarding bond waiver, we hold that a taxpayer who chooses to proceed under the statutory alternative for an appeal bond provided under West Virginia Code § 11–10–10(d), and who otherwise complies with the statutory requirements for requesting a waiver of the appeal bond requirement, is entitled to apply to the circuit court for a review of any adverse determination concerning bond waiver. In considering such an application, the lower court should consider evidence of Taxpayer's ability to pay the tax assessment and other relevant factors that the Tax Commissioner or Taxpayer wish to address with regard to the issue of adequate assets or other substitute indemnification. If the circuit court makes a determination that the Tax Commissioner has unreasonably refused to issue a certificate regarding the taxpayer's adequacy of assets or other proposed substitute indemnification, the circuit court has authority to set the terms of the appeal. While the ninety-day period prescribed by statute for obtaining an appeal bond or the statutory alternative remains enforceable, where a litigant who properly sought a waiver from the Tax Commissioner within the ninety-day statutory period seeks judicial review of the Tax Commissioner's decision within that ninety-day period, the lower court has jurisdiction to address the issue, and, in due course to hear a resulting appeal.

In undertaking to fashion relief for the Taxpayer aggrieved by the lack of a remedy at law due to the constitutional deficiency, we note the failure of Taxpayer to apply to the Tax Commissioner for a waiver of the appeal bond requirement within the ninety-day period after the appeal was filed.[13] *See* W.Va.Code § 11–10–10(d). We note that while Taxpayer did undertake efforts within that time period to obtain a bond, his difficulty in obtaining a bond was attributable at least indirectly, if not directly, to the dilatory efforts of the Tax Commissioner to issue the ruling appealed from. Based on our determination that ultimate discretionary authority concerning the appeal bond or its substitute cannot rest with the administrative body who is a party to the appeal, we find it necessary to allow Taxpayer a reasonable opportunity to perfect his appeal. Accordingly, we are remanding this matter to the circuit court with the following directions. Within the ninety-day period next following the issuance of the mandate herein, Taxpayer shall: (1) post the required bond or propose to Tax Commissioner what property or other indemnification Taxpayer proposes to substitute for such bond, or, (2) failing such agreement, apply to the circuit court below for a judicial determination of what property or other indemnification may lawfully be substituted if Taxpayer and Tax Commissioner do not promptly reach an agreement well before the expiration of such ninety-day period. If it is necessary for the circuit court to fix the terms for substituted property or other indemnification, the lower court's order should be made as soon after the Taxpayer's application to the circuit court or the expiration of such ninety-day period as practicable. The lower court should consider evidence of Taxpayer's ability to pay the tax assessment and other relevant factors that the Tax Commissioner or Taxpayer wish to adduce with regard to the issue of adequate assets or other substitute indemnification. Any agreement between Taxpayer and the Tax Commissioner should be filed with the Circuit Court within the ninety-day period, and preferably well before. Upon either agreement be-

---

**13.** Taxpayer concluded that applying to the Tax Commissioner for relief from the bond require- ment would likely be "futile."

tween Taxpayer and the Tax Commissioner or an order of the circuit court in lieu thereof, Taxpayer must either comply within ten days of the filing of the agreement or entry of the circuit court's order or his appeal shall be dismissed.

Accordingly, we hereby reverse the decision of the Circuit Court of Kanawha County and remand this matter for further proceedings consistent with the directives contained in this opinion.

Reversed and Remanded with Directions.

DAVIS, J., dissenting.

(Filed Nov. 14, 2001)

This case was a straightforward appeal by Gary W. Frantz. Mr. Frantz contested the dismissal of his administrative appeal by the Circuit Court of Kanawha County. The circuit court dismissed the administrative appeal concluding that it did not have jurisdiction because Mr. Frantz failed to post an appeal bond as required by W. Va.Code § 11–10–10(d) (1986) (Repl.Vol.1999).[1] Mr. Frantz unsuccessfully attempted to post an appeal bond under a provision of the statute requiring "the taxpayer [to] file with the clerk of the circuit court a cash bond or a corporate surety bond approved by the clerk." *Id.* Because the appeal bond is statutorily mandated, the circuit court was correct in finding that it had no jurisdiction to address the merits of the administrative appeal. Based upon the posture of the case presented by the circuit court's ruling, the only issue presented to this Court was whether the circuit court was correct in determining it had no jurisdiction because Mr. Frantz failed to file with the clerk of the circuit court a bond approved by the clerk. Rather than

addressing this narrow issue, the majority opinion has held as unconstitutional the bond waiver under W. Va.Code § 11–10–10(d). Insofar as the bond waiver provision was never invoked, nor attempted to be invoked by Mr. Frantz, I dissent.

## I.

### *The West Virginia Supreme Court of Appeals of Is Not Generally Empowered to Give Advisory Opinions*

The record in this case is clear. Mr. Frantz never sought to invoke the alternative to an administrative appeal bond under W. Va.Code § 11–10–10(d). W. Va.Code § 11–10–10(d) provides, in pertinent part:

Notwithstanding the aforegoing and in lieu of such bond, the tax commissioner, in his discretion upon such terms as he may prescribe, may upon a sufficient showing by the taxpayer, certify to the clerk of the circuit court that the assets of the taxpayer subject to the lien imposed by section twelve of this article, or other indemnification, are adequate to secure performance of the orders of the court.

Mr. Frantz never requested that the Tax Commissioner "certify to the clerk of the circuit court that the assets of the taxpayer . . . are adequate to secure performance of the orders of the court." The circuit court was never presented with a complaint by Mr. Frantz that the Tax Commissioner refused to make the bond waiver as is provided for under the statute. Even so, the majority opinion has undertaken to address the constitutionality of the bond waiver provision when the provision was never in controversy.

The penalty of this bond shall be not less than the total amount of tax, additions to tax, penalties and interest for which the taxpayer was found liable in the administrative decision of the tax commissioner. Notwithstanding the foregoing and in lieu of such bond, the tax commissioner, in his discretion upon such terms as he may prescribe, may upon a sufficient showing by the taxpayer, certify to the clerk of the circuit court that the assets of the taxpayer subject to the lien imposed by section twelve of this article, or other indemnification, are adequate to secure performance of the orders of the court.

1. W. Va.Code § 11–10–10(d) (1986) (Repl.Vol. 1999) reads in full:

If the appeal is of any assessment for additional taxes (except a jeopardy assessment for which security in the amount thereof was previously filed with the tax commissioner), then within ninety days after the petition for appeal is filed, or sooner if ordered by the circuit court, the taxpayer shall file with the clerk of the circuit court a cash bond or a corporate surety bond approved by the clerk. The surety must be qualified to do business in this state. These bonds shall be conditioned that the taxpayer shall perform the orders of the court.

It is well-settled and fundamental law that "this Court is not authorized to issue advisory opinions[.]" *State ex rel. City of Charleston v. Coghill,* 156 W.Va. 877, 891, 207 S.E.2d 113, 122 (1973) (Haden, J., dissenting). In this regard, this Court observed in *Harshbarger v. Gainer,* 184 W.Va. 656, 659, 403 S.E.2d 399, 402 (1991) that "[s]ince President Washington, in 1793, sought and was refused legal advice from the Justices of the United States Supreme Court, courts—state and federal—have continuously maintained that they will not give 'advisory opinions.' " Likewise, we noted in *United Fuel Gas Co. v. Public Service Commission,* 73 W.Va. 571, 578, 80 S.E. 931, 934 (1914), that "[b]y the plain terms of the Constitution appellate jurisdiction is limited to controversies arising in judicial proceedings[.]" This Court further addressed the issue of advisory opinions in *Mainella v. Board of Trustees of Policemen's Pension or Relief Fund of City of Fairmont,* 126 W.Va. 183, 185–86, 27 S.E.2d 486, 487–88 (1943), as follows:

> Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes. The pleadings and evidence must present a claim of legal right asserted by one party and denied by the other before jurisdiction of a suit may be taken.

*Accord State ex rel. ACF Indust., Inc. v. Vieweg,* 204 W.Va. 525, 533 n. 13, 514 S.E.2d 176, 184 n. 13 (1999). Despite these strong admonitions, though, we have recognized narrow exceptions to the rule against advisory opinions in cases involving "friendly" lawsuits. "Nonetheless, before this Court will undertake to adjudicate any matter directly affecting the public in general . . ., it must appear conclusively that every issue which could be raised in a proceeding to settle rights was raised[.]" *State ex rel. Alsop v. McCartney,* 159 W.Va. 829, 834, 228 S.E.2d 278, 281 (1976).

In the instant appeal, the majority opinion rendered an advisory decision that the bond waiver provision is unconstitutional without first considering whether such a decision is appropriate, which, I submit, it is not. The majority opinion further concluded in its self-appointed advisory capacity, that Mr. Frantz thought it would be futile to ask the Tax Commissioner to waive the bond. However, even if such a decision were warranted in this case, the majority opinion sets forth no facts to support the futility argument. None existed. Under the "futility" standard adopted by the majority of the Court, anyone can refuse to comply with a statutory or administrative procedure and yet challenge the constitutionality of the procedure by simply stating that the act would be futile. Such reasoning is illogical and one with which I cannot agree.

## II.

### *The Majority Opinion Both Nullifies and Validates W.Va.Code § 11–10–10(d)*

Assuming, for the sake of argument, that the majority could legally address the Tax Commissioner's bond waiver authority under W. Va.Code § 11–10–10(d), I still dissent because its interpretation of this statutory provision is fraught with irreconcilable inconsistencies.

The majority opinion concluded that the bond waiver provision under W. Va.Code § 11–10–10(d) was unconstitutional because it "violates the open courts provision set forth in article III, section 17 of the West Virginia Constitution." Immediately after invalidating the bond waiver provision as unconstitutional, the majority opinion then proceeded to resurrect the provision by stating that the bond waiver provision *could* be used by the Tax Commissioner so long as the taxpayer "is entitled to apply to the circuit court for a review of any adverse determination concerning bond waiver." This reasoning is both illogical and contrary to the manner by which the case should have been resolved.

Obviously, the bond waiver provision cannot be both unconstitutional and constitutional. What the majority intended to say, and should have said to support its position, is that for the bond waiver provision to be constitutional, the majority would impose a requirement that circuit courts be allowed to review a bond waiver determination. Under this approach, it would then have been logical to permit the Tax Commissioner to continue

to employ this provision. This method of decision embodies the Court's traditional way of doing what the majority opinion attempted to do in this case. That is, such an approach is consistent with this Court's prior pronouncements that "[u]nder the doctrine of the least obtrusive remedy, this Court will not strike down a statute as unconstitutional whenever there is an adequate less obtrusive remedy which will assure that the statute will not be unconstitutionally applied." Syl. pt. 1, *State ex rel. Harris v. Calendine*, 160 W.Va. 172, 233 S.E.2d 318 (1977). *See also* Syl. pt. 5, *State ex rel. Roy Allen S. v. Stone*, 196 W.Va. 624, 474 S.E.2d 554 (1996) ("Where a statute ... is technically deficient for constitutional reasons, this Court will apply the remedy and give the statute, wherever possible, an interpretation which will cure its defect and save it from total invalidation."); Syl. pt. 2, *McGuire v. Farley*, 179 W.Va. 480, 370 S.E.2d 136 (1988) (same); Syl. pt. 2, *Anderson's Paving, Inc. v. Hayes*, 170 W.Va. 640, 295 S.E.2d 805 (1982) (same); Syl. pt. 2, *Weaver v. Shaffer*, 170 W.Va. 107, 290 S.E.2d 244 (1980) (same); Syl. pt. 4, in part, *State ex rel. Alsop v. McCartney*, 159 W.Va. 829, 228 S.E.2d 278 (1976) (same). Indeed this Court has long admonished that "[e]very reasonable construction must be resorted to in order to save a statute from unconstitutionality." Syl. pt. 3, *State v. Massie*, 95 W.Va. 233, 120 S.E. 514 (1923). *Accord* Syl. pt. 2, *State ex rel. Cosner v. See*, 129 W.Va. 722, 42 S.E.2d 31 (1947) ("In passing upon the validity of a statute which is challenged as violative of the Constitution of this State, every reasonable construction will be resorted to by the court to sustain its constitutionality."); *State ex rel. Downey v. Sims*, 125 W.Va. 627, 649, 26 S.E.2d 161, 170 (1943) ("It is the duty of courts to adopt a construction of a statute that will bring it into harmony with the Constitution, if its language will permit. The duty of the courts so to construe a statute as to save its constitutionality when it is reasonably susceptible of two constructions includes the duty of adopting a construction that will not subject it to a succession of doubts as to its constitutionality, for it is well settled that a statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubt upon that score." (internal quotations and citation omitted)). In light of the majority opinion's failure to justify its decision in this regard, and its overarching consideration of an issue that was not even properly before it for consideration, I continue to disapprove of the majority's decision herein.

For the foregoing reasons, I respectfully dissent.