# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2021 Term

**FILED**
**November 22, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 21-0559

JAMES C. JUSTICE, II, GOVERNOR OF THE STATE OF WEST VIRGINIA,
Petitioner, Defendant Below

v.

WEST VIRGINIA AFL-CIO, ET AL.
Respondents, Plaintiffs Below

Appeal from the Circuit Court of Kanawha County
The Honorable Tera Salango, Judge
Civil Action Nos. 21-P-156 through 21-P-169

REVERSED AND REMANDED

Submitted:  October 26, 2021
Filed:  November 22, 2021

Patrick Morrisey, Esq.
Attorney General
Lindsay S. See, Esq.
Solicitor General
Curtis R. A. Capehart, Esq.
Deputy Attorney General
Virginia M. Payne, Esq.
Assistant Solicitor General/Deputy
Attorney General
Charleston, West Virginia
Counsel for Petitioner

Robert M. Bastress, Jr., Esq.
Morgantown, West Virginia

Jeffrey G. Blaydes, Esq.
BLAYDES LAW, PLLC
Charleston, West Virginia
Counsel for Respondents

Matthew B. Gilliam, Esq.
Counsel for Amicus Curiae,
National Right to Work Legal Defense
and Education Foundation, Inc.
Springfield, Virginia

John F. Dascoli, Esq.
JOHN F. DASCOLI, PLLC
Charleston, West Virginia
Counsel for Amicus Curiae,
West Virginia Deputy Sheriffs'
Association.

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE HUTCHISON and JUSTICE WOOTON dissent and reserve the right to file separate opinions.

SYLLABUS BY THE COURT

1.    "The granting or refusal of an injunction, whether mandatory or preventive, calls for the exercise of sound judicial discretion, in view of all the circumstances of the particular case; regard being had to the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties involved in the award or denial of the writ."  Syllabus Point 4, *State v. Baker*, 112 W. Va. 263, 164 S.E. 154 (1932).

WALKER, Justice:

Earlier this year, the Legislature passed the West Virginia Paycheck Protection Act, which prohibits state employers from continuing to deduct union dues and employee association membership fees from public employees' wages as they have in the past. One month before the new law's effective date, Respondents[1]—labor unions, employee associations, and individual members of such groups—sought to enjoin its enforcement. They argued to the circuit court that the law violated certain of their constitutional rights and that its enforcement would harm them, irreparably. The circuit court agreed and enjoined enforcement of the law. Petitioner the Honorable James C. Justice, II, Governor of the State of West Virginia, appeals.

A preliminary injunction is a powerful remedy that should issue only after a court has carefully considered the parties' arguments, evidence, and relevant authorities. Our review of the circuit court's order preliminarily enjoining the new law from taking effect reveals that it is a product of less than careful consideration. We conclude that the

---

[1] Respondents are West Virginia AFL-CIO; American Federation of Teachers – West Virginia, AFL-CIO; The International Union, United Mine Workers of America; Communications Workers of America, District 2-13, AFL-CIO; Professional Firefighters of West Virginia; West Virginia Education Association; West Virginia School Service Personnel Association; West Virginia State Lodge of the Fraternal Order of Police; District 8 of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union; CWA/NCPSO Local 2055/West Virginia Division of Corrections and Rehabilitation; CWA Local 2001/West Virginia Alcohol Beverage Control Administrative Agency; Corporal J.W. Smith, Jr.; and Jacob Fertig.

likelihood of Respondents' success on the merits of their claims—that the new law violates their constitutional rights—is far less than the circuit court believed it to be. For that reason, and when viewed in the context of other factors relevant to the issuance or refusal of a preliminary injunction, we conclude that the circuit court abused its discretion when it granted Respondents injunctive relief. So, we reverse the circuit court's order, dissolve the injunction, and remand for further proceedings.[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal concerns the West Virginia Paycheck Protection Act—also known as House Bill 2009[3]—enacted in the 2021 Regular Session of the West Virginia Legislature. Broadly, HB 2009 bars State employers from continuing to deduct union dues and employee association membership fees from public employees' wages. Mechanically,

---

[2] The Court wishes to acknowledge and express appreciation for the contribution of Amici Curiae the National Right to Work Legal Defense and Education Foundation, Inc., and the West Virginia Deputy Sheriffs' Association.

[3] 170 W. Va. Acts 2021 (eff. June 17, 2021). HB 2009 was passed by the Legislature on March 19, 2021. Among other provisions, the bill amended W. Va. Code § 21-5-1. The Legislature had passed another version of § 21-5-1 eight days earlier. The earlier version did not include the amendments to the definition of "deduction" at issue, here. *See* 167 W. Va. Acts 2021 (eff. June 9, 2021). *See also Wiley v. Toppings*, 210 W. Va. 173, 175, 556 S.E.2d 818, 820 (2001) ("When faced with two conflicting enactments, this Court and courts generally follow the black-letter principle that 'effect should always be given to the latest . . . expression of the legislative will[.]'") (footnote omitted) (quoting *Joseph Speidel Grocery Co. v. Warder*, 56 W. Va. 602, 608, 49 S.E. 534, 536 (1904)).

HB 2009 produces that result by amending the definition of "deduction" in the Wage Payment and Collection Act.[4]

Before it was amended by HB 2009, the Wage Payment and Collection Act defined "deductions" as "amounts required by law to be withheld [from an employee's wages], and amounts authorized for union or club dues, pension plans, payroll savings plans, credit unions, charities and hospitalization and medical insurance." Practically, this definition meant that employer and employee could "agree . . . as to *deductions* to be made from the payroll of [the] employee[]," without complying with the additional statutory requirements imposed on the formation of legal wage assignments, such as annual reauthorization.[5] For example, because the Legislature has included in the definition of "deduction" "amounts authorized for . . . charities," an employer may deduct from an employee's wages an amount he has authorized and pay that amount to the employee's chosen charity and may continue to do so until the employee says, "Stop." And because the definition of "deduction" included "amounts authorized for union or club dues," public and private employers could deduct those from an employee's wages year after year without the employee's annual reauthorization.

---

[4] W. Va. Code §§ 21-5-1 to -18.

[5] *See* W. Va. Code § 21-5-3(e) (2018) (emphasis added) (setting forth requirements for valid wage assignments, but also providing that "nothing [therein] contained may be construed as affecting the right of employer and employees to agreement between themselves to the deductions to be made from the payroll of employees").

HB 2009 changed all that for public employers and employees in West Virginia. First, HB 2009 amended the definition of "deduction" in the Wage Payment and Collection Act as follows:

> (g) The term "deductions" includes amounts required by law to be withheld, and amounts authorized for union, labor organization, or club dues or fees, pension plans, payroll savings plans, credit unions, charities, and any form of insurance offered by an employer: *Provided*, *That for a public employee, other than a municipal employee covered by a collective bargaining agreement with a municipality which is in effect on July 1, 2021, the term "deductions" shall not include any amount for union, labor organization, or club dues or fees*.[6]

The Legislature added this caveat to West Virginia Code § 21-5-3, as well: "[t]hat nothing in [Chapter 21] shall be construed to interfere with the right of an employee to join, become a member of, contribute to, donate to, or pay dues or fees to a union, labor organization, or club."[7]

The Legislature also amended other parts of the Code. For example, added to Chapter 7 (County Commissions and Officers), Article 5 (Fiscal Affairs) is new section twenty-five, which states that "[n]o deductions or assignments of earnings shall be allowed for union, labor organization, or club dues or fees from the compensation of county officers

---

[6] *Id*. (emphasis added) (codified at W. Va. Code § 21-5-1 (eff. June 17, 2021)).

[7] *Id*. (amending W. Va. Code § 21-5-3 (eff. June 17, 2021)).

4

and employees."[8]  Similar language was added as subpart (c) to West Virginia Code § 8-5-12, regarding compensation of municipal officers and employees:

> No deductions or assignments of earnings shall be allowed for union, labor organization, or club dues or fees from the compensation of officers or employees covered by this section: *Provided*, That this subsection shall not apply to municipal employees covered by a collective bargaining agreement with a municipality which is in effect on July 1, 2021.[9]

Amendments to the same effect were made to West Virginia Code §§ 12-3-13b (state employees) and 18A-4-9 (teachers and school personnel).  HB 2009 was slated to take effect on June 17, 2021, so that after that date, unions and employee associations could not collect dues or membership fees directly from a public employee's wages.

On May 20, 2021, Respondents filed a complaint for equitable relief in the Circuit Court of Kanawha County.  They sought a declaration that HB 2009 violates their rights under the equal protection, contract, and speech and associational clauses of the West Virginia Constitution, and injunctive relief.  Respondents also filed a motion to preliminarily enjoin HB 2009 from taking effect.  Respondents argued that, should the court permit HB 2009 to take effect, they would "have to forego their regular representational activities and redirect precious resources toward new methods of collecting union dues."  They contended that the harm posed by the law to Respondents'

---

[8] *Id*. (codified at W. Va. Code § 7-5-25 (eff. June 17, 2021)).

[9] *Id*. (amending W. Va. Code § 8-5-12 (eff. June 17, 2021)).

5

"constitutionally weighty interests" far outweighed any de minimis harm posed to Petitioner should the law not take effect, as "[t]he only conceivable state interest that can be claimed that [HB 2009] will vindicate is the negligible cost associated with administering the program."

According to Respondents, the deduction of dues from public employees' wages premised on agreements or contracts between public employers and public employee unions had been the decades-long status quo; why, they questioned, had the Legislature chosen to forbid the practice now and only for public employee unions and associations? Their answer: animus towards unions expressed in a law that treats unions differently than other entities (equal protection), undercuts unions' ability to collect dues from members and so hinder their ability to advocate on behalf of members (freedom of speech and association), and impinges on long-standing agreements between public employees, the unions, and public employers (the contract clause). Respondents argued that HB 2009 contravened this Court's decision in *Pushinsky v. West Virginia Board of Law Examiners*,[10] among others, and related federal authority because it targeted member-employees' exercise of their right to speech and association by withdrawing a benefit—payroll deductions—from them while continuing to offer the benefit to groups other than unions.

---

[10] 164 W. Va. 736, 266 S.E.2d 444 (1980).

6

Petitioner countered that Respondents were highly unlikely to succeed on the merits of their claims under the West Virginia Constitution because (1) state and federal courts had already rejected similar (or identical) theories challenging similar (or identical) laws; (2) nothing indicated that Respondents' claims—all predicated on rights guaranteed by the West Virginia Constitution—would fare any better; (3) Civil Rights Era cases cited by Respondents were not relevant to their claims; (4) Respondents had not produced any contracts to be protected by the contract clause of the West Virginia Constitution; (5) HB 2009 did not unreasonably shift to unions the responsibility to collect members' dues; and (6) this Court's April 2020 decision in *Morrisey v. West Virginia AFL-CIO, et al.* (*Morrisey II*),[11] and its September 2017 decision in *Morrisey v. West Virginia AFL-CIO, et al.* (*Morrisey I*),[12] resolved Respondents' freedom of speech and association claims.

Finally, Petitioner argued that Respondents had not demonstrated that any harm they would suffer should HB 2009 take effect would be irreparable. Respondents could simply use the tools routinely used by other organizations and businesses to collect money, i.e., automatic bank drafts or charges to members' credit or debit cards. The length of time Respondents had relied on wage deductions to collect members' dues did not change the fact that dues are easily collected by other means. In closing, Petitioner argued

[11] *Morrisey v. W. Va. AFL-CIO, et al.*, 243 W. Va. 86, 842 S.E.2d 455 (2020).

[12] *Morrisey v. W. Va. AFL-CIO, et al.*, 239 W. Va. 633, 804 S.E.2d 883 (2017).

7

that the public has an interest in the enforcement of duly enacted state laws that equaled or outweighed Respondents' alleged harm.

The circuit court conducted an evidentiary hearing on June 14, 2021, at which three witnesses testified in support of Respondents' motion. With Respondents' evidence submitted, the court ruled from the bench that it would grant the motion for a preliminary injunction, finding that Respondents would suffer irreparable harm should HB 2009 take effect.[13]

## II. STANDARD OF REVIEW

The June 16, 2021, order from which Petitioner appeals is not a final order. Generally, this Court will not review such interlocutory orders. But we recognize an exception by which a party may seek review of preliminary and temporary injunctions: "*West Virginia Constitution*, article VIII, section 3, which grants this Court appellate jurisdiction of civil cases in equity, includes a grant of jurisdiction to hear appeals from interlocutory orders by circuit courts relating to preliminary and temporary injunctive relief."[14] And when we hear such an appeal, "'[w]e review the final order granting the [preliminary] injunction and the ultimate disposition under an abuse of discretion standard,

---

[13] The court entered an Amended Order memorializing and expanding upon that ruling on June 16. The docket sheet for Civil Action 21-P-156 (consolidated) shows that both an "Order" and "Amended Order" were filed on June 16. The court's amendment to the original Order is not apparent from the record.

[14] Syl. Pt. 2, *State ex rel. McGraw v. Telecheck Servs., Inc.*, 213 W. Va. 438, 582 S.E.2d 885 (2003).

we review the circuit court's underlying factual findings under a clearly erroneous standard, and we review questions of law de novo.'"[15]

### III. ANALYSIS

A preliminary injunction is "a harsh remedial process," and should be "used only in cases of great necessity and not looked upon with favor by the courts."[16] "'[T]he party seeking the injunction . . . bear[s] the burden of demonstrating the various factors justifying preliminary injunctive relief, such as the likelihood of irreparable injury to it if an injunction is denied and its likelihood of success on the merits.'"[17]

Because a preliminary injunction is such a harsh remedy, a court must exercise its discretion cautiously, carefully weighing all pertinent factors. To assist lower courts in doing so, we have held that

> [t]he granting or refusal of an injunction, whether mandatory or preventive, calls for the exercise of sound judicial discretion, in view of all the circumstances of the particular case; regard being had to the nature of the controversy, the object for which the injunction is being

---

[15] *Morrisey I*, 239 W. Va. at 637–38, 804 S.E.2d at 887–88 (quoting Syl. Pt. 1, in part, *State by and through McGraw v. Imperial Marketing*, 196 W. Va. 346, 472 S.E.2d 792 (1996) (citations omitted)).

[16] *Jefferson Cnty. Bd. of Educ. v. Jefferson Cnty. Educ. Ass'n*, 183 W. Va. 15, 24, 393 S.E.2d 653, 662 (1990) (internal quotations omitted).

[17] *Camden-Clark Mem. Hosp. Corp. v. Turner*, 212 W. Va. 752, 760, 575 S.E.2d 362, 370 (2002) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 441 (1974)).

sought, and the comparative hardship or convenience to the respective parties involved in the award or denial of the writ.[18]

Courts in West Virginia commonly turn to what we recently labelled the "clearer alternative standard"[19] contained in *Jefferson County Board of Education v. Jefferson County Education Association* to guide that discretion. Under *Jefferson County*, courts

> "must consider, in 'flexible interplay,' the following four factors in determining whether to issue a preliminary injunction: (1) the likelihood of irreparable harm to the plaintiff without the injunction; (2) the likelihood of harm to the defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest."[20]

---

[18] Syl. Pt. 4, *State v. Baker*, 112 W. Va. 263, 164 S.E. 154 (1932).

[19] *Ne. Nat. Energy LLC v. Pachira Energy LLC*, 243 W. Va. 362, 366, 844 S.E.2d 133, 137 (2020).

[20] *Jefferson Cnty. Bd. of Educ.*, 183 W. Va. at 24, 393 S.E.2d at 662 (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1054 (4th Cir. 1985) (citing *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 193–96 (4th Cir. 1977) overruled by *Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009) *vacated on other grounds*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, (2010), *aff'd*, *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 607 F.3d 355 (4th Cir. 2010) (per curiam)).

Petitioner urges us to jettison this "alternative standard," in favor of the test now applied by the Fourth Circuit. *See Real Truth About Obama, Inc.*, 575 F.3d at 346−47 (overruling *Blackwelder* and adopting preliminary injunction standard articulated by the Supreme Court of the United States in *Winter v. Nat'l Res. Defense Council, Inc.*, 555 U.S. 7, 21 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in

The primary focus of our analysis is the circuit court's conclusion that Respondents are likely to succeed on the merits of their constitutional claims. We briefly consider the harm posed to Respondents should the law take effect and its interplay with Respondents' likelihood of success.

## A.      *Likelihood of Success on the Merits*

Respondents base their claim for injunctive relief upon their allegations that HB 2009 violates the rights guaranteed them by the West Virginia Constitution. As we have held,

> [i]n considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of

the public interest.")). Most federal circuit courts of appeal do not share the Fourth Circuit's view of *Winter*. *See* Taylor Payne, *Now is the Winter of Ginsburg's Dissent: Unifying the Circuit Split as to Preliminary Injunctions and Establishing a Sliding Scale Test*, 13 TENN. J. L. & POL'Y 15 (2018) (detailing split among federal circuit courts of appeal as to preliminary injunction standard following *Winter*). For the time being, we refuse Petitioner's invitation to elevate the Fourth Circuit's current, preliminary injunction standard to a syllabus point. Instead, we hew to Syllabus Point 4 of *State v. Baker*, giving the alternative standard of *Jefferson County* due consideration.

11

the legislature, the negation of legislative power must appear beyond reasonable doubt.[21]

And, in a similar vein,

> Acts of the Legislature are presumed to be constitutional, and courts will interpret legislation in any reasonable way which will sustain its constitutionality. *State ex rel. City of Charleston v. Coghill,* 156 W.Va. 877, 207 S.E.2d 113 (1973); *State ex rel. Appalachian Power Co. v. Gainer,* 149 W.Va. 740, 143 S.E.2d 351 (1965). Thus where a statute is susceptible of more than one construction, one which renders the statute constitutional, and the other which renders it unconstitutional, the statute will be given the construction which sustains constitutionality. *State ex rel. Slatton v. Boles,* 147 W.Va. 674, 130 S.E.2d 192 (1963), *Board of Education v. Board of Public Works,* 144 W.Va. 593, 109 S.E.2d 552 (1959)." *State ex rel. Frieson v. Isner,* 168 W.Va. 758, 778–79, 285 S.E.2d 641, 655 (1981).[22]

In the end, for Respondents to prevail, it must "appear beyond reasonable doubt"[23] that the Legislature exceeded its authority under the West Virginia Constitution when it enacted HB 2009. Petitioner now argues that the circuit court abused its discretion by concluding

---

[21] Syl. Pt. 1, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965). *See also* Syl. Pt. 1, *Foster v. Cooper*, 155 W. Va. 619, 186 S.E.2d 837 (1972) ("The Constitution of West Virginia being a restriction of power rather than a grant thereof, the [L]egislature has the authority to enact any measure not inhibited thereby.").

[22] Syl. Pt. 2, *State ex rel. Frazier v. Meadows*, 193 W. Va. 20, 454 S.E.2d 65 (1994).

[23] Syl. Pt. 1, in part, *State ex rel. Appalachian Power Co.*, 149 W. Va. at 740, 143 S.E.2d at 351.

that Respondents will likely prevail on their claims that the Legislature did just that. We agree with Petitioner.

### 1.    *Speech and Associational Rights*

Petitioner argues that the circuit court erroneously concluded that Respondents are likely to succeed on their claim that HB 2009 violates their speech and associational rights guaranteed by article III, sections 7[24] and 16[25] of the West Virginia Constitution.[26] We agree.

Numerous federal appellate courts have addressed challenges to state laws regarding deduction of union dues from public employees' wages brought under the First Amendment to the United States Constitution. These courts have found such laws to be facially neutral ones that do not prohibit unions or their members from espousing their

---

[24] W. VA. CONST. art. III, § 7 ("Freedom of speech and press guaranteed. No law abridging the freedom of speech, or of the press, shall be passed; but the Legislature may, by suitable penalties, restrain the publication or sale of obscene books, papers, or pictures, and provide for the punishment of libel, and defamation of character, and for the recovery, in civil actions, by the aggrieved party, of suitable damages for such libel, or defamation.").

[25] W. VA. CONST. art. III, § 16 ("Right of public assembly held inviolate. The right of the people to assemble in a peaceable manner, to consult for the common good, to instruct their representatives, or to apply for redress of grievances, shall be held inviolate.").

[26] The associational protections found in article III, § 7 parallel those in the First Amendment to the United States Constitution. *See Woodruff v. Bd. of Trustees of Cabell Huntington Hosp.*, 173 W. Va. 604, 609, 319 S.E.2d 372, 378 (1984). The Supreme Court of the United States' "interpretation of the First Amendment is binding on this Court." *Pushinsky*, 164 W. Va. at 744, 266 S.E.2d at 449.

views.[27]  And, these courts have considered and rejected Respondents' essential argument: that laws like HB 2009 make it harder for them to collect dues and so decrease the resources available to further their speech-related and associational activities.[28]

Petitioner is also correct to suggest that this Court addressed in *Morrisey II* the Civil Rights Era cases Respondents rely on, here, to support their claim that HB 2009 violates their associational rights.  In *Morrisey II*, we held that West Virginia's right-to-work law did not violate the associational rights guaranteed by the West Virginia Constitution.[29]  We rejected the unions' contention that the right-to-work law impaired their ability to associate with employees to advance workers' causes, just as certain state action had impaired Civil Rights activists' associational rights in the late-1950s and

---

[27] *See, e.g.*, *S. C. Ed. Ass'n v. Campbell*, 883 F.2d 1251, 1256 (1989).

[28] *See Bailey v. Callaghan*, 715 F.3d. 956 (6th Cir. 2013) (state law prohibiting public-school employers from deducting union dues from employees' wages was not a restriction on members' and unions' speech and associational rights; law was facially neutral, and court would not go behind the text of such a law to divine legislative malintent); *Wisc. Ed. Ass'n Council v. Walker*, 705 F.3d 640, 646 (7th Cir. 2013) (state law prohibiting deduction of union dues from wages of certain class of public employees did not violate First Amendment; state was not required to subsidize unions' speech by facilitating collection of dues via payroll deduction and statute did not otherwise diminish unions' speech rights); *Ark. State Highway Emp. Loc. 1315 v. Kell*, 628 F.2d 1099, 1102 (8th Cir. 1980) (highway department's refusal to deduct union dues from employee-members' wages did not violate employee-members' speech rights because "while a public employer may not constitutionally prohibit its employees from joining together in a union, or from persuading others to do so, or from advocating any particular ideas, the First Amendment does not impose any duty on a public employer to affirmatively assist, or even to recognize a union").

[29] Syl. Pt. 1, *Morrisey II*, 243 W. Va. at 86, 842 S.E.2d at 455.

1960s.[30] We were leery of the connection because "[t]hose cases primarily involved efforts by the states to compel disclosure of NAACP members so that those members could be subjected to retribution for their membership in the organization," efforts certain to "have had a chilling effect" on individuals' "willingness . . . to join or remain a member of the civil rights organization[.]"[31] We then went on to distinguish the state action at issue in those cases from the right-to-work law, explaining that there was "nothing" in the right-to-work law "to discourage or prevent labor organizations from soliciting workers to join their organization, nor does [the ban] facilitate retaliation upon those who voluntarily choose to become union members."[32] It is a small leap from there to here, and the inference that HB 2009 similarly poses little threat to Respondents' free speech or associational rights.[33] For these reasons, we conclude that the circuit court erred when it held that Respondents are

---

[30] *Id*. at 103, 842 S.E.2d at 472.

[31] *Id*. at 106, 842 S.E.2d at 476.

[32] *Id*. at 107, 842 S.E.2d at 476.

[33] *Kell*, 628 F.2d at 1102 (explaining that "while a public employer may not constitutionally prohibit its employees from joining together in a union, or from persuading others to do so, or from advocating any particular ideas, the First Amendment does not impose any duty on a public employer to affirmatively assist, or even to recognize a union"). *See also S.C. Educ. Ass'n*, 883 F.2d at 1256. Because courts like the Eighth Circuit have held that the First Amendment does not require a state employer to assist a union to collect dues, Respondents' distinction between the right-to-work law and HB 2009—that the former applies to employees who do not want to pay union dues and the latter applies to those who do—would seem to carry little weight.

likely to succeed on the merits of their claims that HB 2009 violates their speech and associational rights.

## 2. *Equal Protection*

The circuit court held that Respondents are likely to succeed on the merits of their equal protection claims because HB 2009 threatens fundamental rights and cannot be justified by Petitioner. Petitioner contends that, again, the circuit court ignored on-point, federal authority stating that union membership is not a protected class and there is no constitutionally protected interest in dues deductions. Petitioner also argues that HB 2009 satisfies rational-basis review. Respondents contend that by HB 2009, the Legislature is withholding the benefit of wage deductions from unions and unions alone, and so is violating the principles of the common benefits clause of the West Virginia Constitution. And, they argue, Petitioner's interest cannot withstand rational-basis review. Finally, they contend that the cases relied on by Petitioner to support that proposition are easily distinguished. Again, we agree with Petitioner: Respondents have not demonstrated a likelihood of success on this claim.

"Equal protection of the law is implicated when a classification treats similarly situated persons in a disadvantageous manner. The claimed discrimination must be a product of state action as distinguished from a purely private activity."[34] "If the

---

[34] Syl. Pt. 2, *Israel by Israel v. W. Va. Secondary Sch. Activities Comm'n*, 182 W. Va. 454, 388 S.E.2d 480 (1989).

16

challenged classification affects the exercise of a fundamental right or is based upon a constitutionally suspect criterion,"[35] then "the State [must] prove that the classification is necessary to the accomplishment of a compelling state interest."[36] When a classification does not affect "a fundamental right or some suspect or quasi-suspect criterion . . . it will be sustained so long as it is 'rationally related to a legitimate state interest.'"[37] Generally, "legislative classifications . . . which involve economic rights, are subjected to the least level of scrutiny, the traditional equal protection concept that the legislative classification will be upheld if it is reasonably related to the achievement of a legitimate state purpose."[38] The concept of equal protection under the West Virginia Constitution is "coextensive or broader than that of the fourteenth amendment to the United States Constitution."[39]

Petitioner provides persuasive authority—both state and federal—indicating that laws like HB 2009 do not implicate rights subject to heightened scrutiny for purposes of equal protection. This includes *City of Charlotte v. Local 66, International Association*

---

[35] *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 594, 466 S.E.2d 424, 445 (1995).

[36] *Id.*

[37] *Id.* (quoting *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985)).

[38] *Lewis v. Canaan Valley Resorts, Inc.*, 185 W. Va. 684, 691, 408 S.E.2d 634, 641 (1991).

[39] Syl. Pt. 3, in part, *Robertson v. Goldman,* 179 W. Va. 453, 369 S.E.2d 888 (1988).

17

*of Firefighters.*[40]  There, a municipal firefighters' union brought an equal protection challenge to the city's policy of permitting wage deductions for some organizations, while refusing to offer the benefit to the union.  In assessing the firefighters' union's claim, the Supreme Court stated that:

> Since it is not here asserted and this Court would reject such a contention if it were made that [the firefighters'] status as union members or their interest in obtaining a dues checkoff is such as to entitle them to special treatment under the Equal Protection Clause, the city's practice must meet only a relatively relaxed standard of reasonableness in order to survive constitutional scrutiny.[41]

Citing *City of Charlotte*, numerous courts have held that prohibitions on union dues payroll deductions are subject only to rational-basis review because "there is no constitutional right to payroll deductions."[42]  As the Supreme Court of Iowa recently observed, "the United States Supreme Court and other appellate courts have rejected equal protection challenges to enactments or policies eliminating payroll deductions for union dues while allowing payroll deductions for nonunion organizations."[43]

---

[40] 426 U.S. 283 (1976).

[41] *Id*. at 286.

[42] *S.C. Educ. Ass'n*, 883 F.2d at 1256.  *See Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 359 (2009) (citing *City of Charlotte*; stating that "the State is not constitutionally obligated to provide payroll deductions at all").

[43] *Iowa State Educ. Ass'n v. State*, 928 N.W.2d 11, 18 (Iowa 2019) (collecting cases).

Respondents' attempts to distinguish *City of Charlotte* and similar authority do not diminish those cases' relevance.  Respondents do not explain how the refusal to *start* union dues payroll deductions (at issue in *City of Charlotte*) is meaningfully distinct from HB 2009, which *stops* the practice.  The method employed by the state actor—a statute like HB 2009, a policy,[44] or municipal practice (at issue in *City of Charlotte*)[45]—is another fine distinction observed by Respondents, the import of which is unexplained.

For similar reasons, Respondents' argument that HB 2009 violates the commons benefits clause, article III, § 3, of the West Virginia Constitution—also an equal protection clause—appears unlikely to succeed.  The cases relied upon by Respondents to support this argument are readily distinguishable.  For example, in *United Mine Workers of America International Union by Trumka v. Parsons*, this Court applied the common benefits clause to ensure even access to a public forum so to "preserve [the State's] neutrality by providing a reasonable opportunity for the presentation of contrasting points of view in order that the 'common benefit, protection and security' be served and fundamental fairness preserved."[46]  Respondents have not informed this Court of any cases

---

[44] *See Kell*, 628 F.2d at 1101.  *Kell* was also an appeal from an order granting the Arkansas State Highway Department's motion for summary judgment.  See, *infra*, regarding the burden attendant to a motion for a preliminary injunction compared to a motion for summary judgment.

[45] *City of Charlotte*, 426 U.S. at 286.

[46] Syl. Pt. 1, in part, *United Mine Workers of Am. Int'l Union by Trumka v. Parsons*, 172 W. Va. 386, 305 S.E.2d 343 (1983).

in which a state payroll system has been considered a public forum. Instead, courts "have consistently evaluated state payroll deductions as *speech subsidies*," so that a state's "'decision not to [allow payroll deduction of union dues] is not an abridgment of the unions' speech.'"[47] Similarly, as the Supreme Court has stated, "the State is not constitutionally obligated to provide payroll deductions at all."[48] And even more specifically, the Supreme Court has observed that, "[w]hile in some contexts the government must accommodate expression, it is not required to assist others in funding the expression of particular ideas, including political ones."[49] Considering this authority, we see the present case as distinguishable from *Parsons* as well as the benefits cases resolved under the federal constitution, cited by Respondents.[50]

---

[47] *Wis. Educ. Ass'n Council*, 705 F.3d at 647 (quoting *Ysursa*, 555 U.S. at 359).

[48] *Ysursa*, 555 U.S. at 359.

[49] *Id*. at 358 (emphasis added).

[50] Respondents contend that HB 2009 "authorize[s] a benefit (i.e., payroll deductions for employee-designated purposes) but specifically denie[s] the benefit if the purpose is to deduct for the payment of dues to 'unions, labor organizations, and clubs.'" Respondents liken the law to those struck down by the Supreme Court in which states sought to withhold medical care to indigents who had recently relocated to the state, *Mem. Hosp. v. Maricopa Cnty.*, 415 U.S. 250 (1974); withhold the franchise to new, state residents who were otherwise eligible, *Dunn v. Blumenstein*, 405 U.S. 330 (1972); and withhold public assistance to those who had recently moved to the state and were otherwise eligible. *Shapiro v. Thompson*, 394 U.S. 618 (1969), *overruled in part by Edelman v. Jordan*, 415 U.S. 651 (1974). Those cases are readily distinguishable because "[t]he right of interstate travel has repeatedly been recognized as a basic constitutional freedom," *Maricopa Cnty.*, 415 U.S. at 254, while "the State is not constitutionally obligated to provide payroll deductions at all." *Ysursa*, 555 U.S. at 359.

The question then becomes whether Respondents are likely to demonstrate that HB 2009 cannot pass rational-basis review. It does not appear that they will be. Petitioner asserts a legitimate interest in avoiding the slippery slope of providing any automatic payroll deduction that an employee may request. The Supreme Court accepted that as a legitimate interest rationally related to the City of Charlotte's practice of permitting wage deductions only for those organizations of general interest and in which all employees might participate—a list that did not include the firefighters' union.[51] The Eighth Circuit accepted the same justification in *Arkansas State Highway Employees' Local 1315 v. Kell*,[52] as did the Supreme Court of Iowa in 2019.[53] Respondents have not pointed us to any decision holding otherwise. Petitioner also claims that, given the recent pronouncement of the Supreme Court of the United States—"that public-sector agency-shop arrangements violate the First Amendment"[54]—"[i]t is also rational for the State to extricate itself from a position as intermediary between union and union members" to avoid the possible violation of an employee's speech rights by inadvertently sending some of his

---

[51] *City of Charlotte*, 426 U.S. at 288−89.

[52] *Kell*, 628 F.2d at 1103.

[53] *Iowa State Educ. Ass'n*, 928 N.W.2d at 19 (quoting with approval the lower court's conclusion that "[t]he fiscal interests of the government are routinely accepted as a rational basis for legislative activity that is viewed as a cost-saving measure for the public" as justification for legislative ban on collection of union dues from public employees via wage deduction).

[54] *Janus v. Am. Fed. of State, Cnty., and Mun. Emp., Council 13*, 138 S. Ct. 2448, 2478 (2018).

21

wages to a union of which he is not a member. This, too, would appear to be a legitimate interest to which HB 2009 is rationally related.

Respondents counter that *City of Charlotte* cannot vindicate HB 2009 because there the city offered affidavits to support its cost-saving justification, while "there is *no evidence of record here* to establish any justification for" HB 2009.[55] This argument overlooks that in *City of Charlotte*, the city appealed from an order resolving the parties' cross-motions for summary judgment,[56] so the city bore the burden to support its assertion that its refusal to allow union dues payroll deduction was rationally related to the cost-savings justification. Here, at the preliminary injunction stage, Respondents bear the "burden of demonstrating the various factors justifying preliminary injunctive relief, such as . . . its likelihood of success on the merits."[57]

Finally, Respondents assert that HB 2009 cannot be the offshoot of a *legitimate* government interest. Instead, they suggest, the law is explicable only as the product of legislative animus, as shown by public officials' "recent acts of hostility" toward unions. Respondents cite for support *Romer v. Evans*,[58] in which the Supreme Court held

---

[55] Emphasis in original.

[56] *See* 426 U.S. at 285.

[57] *Camden-Clark Mem. Hosp. Corp.*, 212 W. Va. at 760, 575 S.E.2d at 370 (internal quotation omitted).

[58] *Romer v. Evans*, 517 U.S. 620 (1996).

22

that an amendment to the Colorado constitution that "prohibit[ed] all legislative, executive or judicial action at any level of state or local government designed to protect . . . homosexual persons"[59] was so broad that it was divorced from "the reasons offered for it [so] that the amendment seems inexplicable by anything but animus toward the class it affects; it lacks a rational relationship to legitimate state interests."[60]

Neither Respondents nor the circuit court has explained how HB 2009 is akin to a state constitutional amendment described by the United States Supreme Court as "unprecedented" and outside the "constitutional tradition" of the United States.[61] More to the point, a similar argument in the context of a state ban on the collection of union dues from public employees by wage deduction was recently rejected by the Supreme Court of Iowa.[62] There, the legislature ended payroll deductions for union dues. The unions challenged the law on grounds like those argued by Respondents, here. After concluding that the payroll-deduction was subject to rational-basis review, only, the court stated,

> House File 291 reflects lawful policy choices by the legislature. The 2017 amendments did not infringe on a fundamental right of speech, association, or equal protection that could justify judicial intervention. The plaintiffs' remedy lies in the elected branches or at the ballot box. *Walker*, 705

---

[59] *Id*. at 624.

[60] *Id*. at 632.

[61] *Id*. at 633.

[62] *Iowa State Educ. Ass'n*, 928 N.W.2d at 19−20. *See also Morrisey I*, 239 W. Va. at 636−37, 824 S.E.2d at 886−87 (observing that "[t]he wisdom, desirability, and fairness of a law are political questions to be resolved in the Legislature").

F.3d at 654; *see also In re Div. of Criminal Justice State Investigators*, 289 N.J.Super. 426, 674 A.2d 199, 204 (1996) ("The solution, if there be one, from the viewpoint of the firemen, is that labor unions may someday persuade state government of the asserted value of collective bargaining agreements, but this is a political matter and does not yield to judicial solution." (quoting *Atkins v. City of Charlotte*, 296 F. Supp. 1068, 1077 (W.D.N.C. 1969))).[63]

In light of this persuasive authority, the circuit court erred when it concluded that Respondents showed a likelihood of success on the merits of their equal protection claim.[64]

### 3.    *Contract Clause*

Finally, Petitioner argues that the circuit court erroneously concluded that Respondents are likely to prevail on the claim that HB 2009 violates the contract clause of the West Virginia Constitution.  Found in article III, § 4, the contract clause provides that "[n]o bill of attainder, ex post facto law, or law impairing the obligation of a contract, shall be passed."   Petitioner contends that the circuit court erroneously concluded that Respondents are likely to prevail on their claim that HB 2009 violates the contract clause because (1) Respondents have not established the existence of any contracts that might be

---

[63] *Iowa State Educ. Ass'n*, 928 N.W.2d at 19–20.

[64] Nor do we find Respondents' argument regarding the differential treatment under HB 2009 of employees subject to collective bargaining agreements and those who are not likely to tip the scale for the equal protection argument.  The law provides what is essentially a "grace period" for those public employers and employees operating under collective bargaining agreements on the law's effective date.  The challenged distinction— collective bargaining agreement versus no collective bargaining agreement—appears to be designed to protect the parties' constitutional rights to enter into private contracts, a rational, legislative goal.

24

impaired; (2) assuming they have, any impairment cannot be substantial; and (3) Respondents were on notice of the possibility of future regulation of wage deductions. On the other hand, Respondents contend that "the existing voluntary agreements reached between public employers and public employees and their unions provide for the employers to withhold union dues and pay them over to the unions." HB 2009 will substantially impair those agreements, they contend, and cannot be justified by a significant public interest.

We resolve this matter on Petitioner's first argument.[65] Initially, HB 2009 does not bar a public employer from deducting dues from the wages of municipal employees who are covered by a collective bargaining agreement in effect on the law's effective date. So, the law does not substantially impair those collective bargaining agreements. Respondents do not contend, otherwise, and they do not allege that any other

---

[65] As we discuss below, Respondents failed to make clear before the circuit court that HB 2009 will substantially impair a contractual relationship, rather than a mere arrangement or an agreed-upon practice. That alone makes the circuit court's conclusion—that Respondents are likely to succeed upon their claim under the contract clause—erroneous. Petitioner offers additional arguments counter to the circuit court's order, and Respondents make additional arguments in support, but we will not address them. The parties' arguments are grounded in the three-step, balance-of-interest test that guides our application of the Contract Clause. Under that test, our "initial inquiry is whether the statute has substantially impaired the contractual rights of the parties." Syl. Pt. 4, in part, *Shell v. Metro. Life Ins. Co.*, 181 W. Va. 16, 380 S.E.2d 183 (1989). We cannot take that initial, analytic step under *Shell* if no contractual rights are at stake. "Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes. . . ." Syl. Pt. 2, in part, *Harshbarger v. Gainer*, 184 W. Va. 656, 403 S.E.2d 399 (1991). So, we limit ourselves to Petitioner's first argument and leave the questions there.

25

collective bargaining agreements exist that might be impacted by HB 2009. So, to demonstrate the "contracts" at issue to the circuit court, Respondents had to look elsewhere.

Respondents offered testimony from an American Federation of Teachers West Virginia (AFTWV) official that roughly fifty-four out of fifty-five county school boards have deducted dues from members' wages for decades.[66] To support that testimony, Respondents supplied a "Memorandum of Agreement Between the Wayne County Board of Education and the West Virginia School Service Personnel Association [(WVSSPA)] and the West Virginia Education Association," which represents that "[t]he school board will allow for the auto draft of the payment of dues to the employees association." But that agreement is not signed. It bears no indication that it was approved by the Wayne County Board of Education, nor is it accompanied by any documentation to the same effect.

Respondents also submitted membership applications and authorizations for the WVSSPA, the Communications Workers of America (CWA), and the West Virginia Troopers Association. These applications are completely blank. Finally, Respondents submitted to the circuit court affidavits from three public employees in which the employees state that they made agreements with their employers to deduct dues from their wages. The affiants, however, do not offer additional information about the details of those agreements. Based on this evidence, the circuit court concluded that HB 2009 will prohibit

---

[66] The record contains an affidavit from a WVSSPA representative regarding the practice.

26

a "long-standing pattern and practice," "cancel . . . an arrangement," and substantially impair agreements between public employers, employees, and unions controlling wage deductions of dues.

What the circuit court did not correctly conclude is that HB 2009 will substantially impair a *contract*. The court appears to have equated the pattern/practice, arrangement, and agreement to deduct dues from public employees' wages to a "contract" subject to the protection of the contract clause. The terms "agreement" and "contract" are related, but there are distinctions between the two. "An agreement is a manifestation of mutual assent on the part of two or more persons,"[67] while "[a] contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty."[68] At most, the exhibits submitted by Respondents in support of their motion for a preliminary injunction—blank membership cards; an unsigned memoranda of agreement between a school board and employee association, *inter alia*—suggest mere mutual assent, or the possibility of it in the case of the blank membership cards.

For Respondents to ultimately succeed on their claim that HB 2009 substantially impairs a contractual relationship, they must first show that a contractual relationship exists. "'It frequently is observed that a preliminary injunction is an

---

[67] RST. (SECOND) OF CONTRACTS § 3 (1981).

[68] *Id*. at § 1.

27

extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion.'"[69]  Here, the exhibits before the circuit court do not clearly show the existence of a contract.[70]  Thus, the circuit court erred when it concluded that Respondents are likely to succeed on the merits of their claim that HB 2009 substantially impairs *contractual* rights in violation of the contract clause.[71]

### B.      *Irreparable Harm*

We briefly consider the harm posed to Respondents should the injunction not issue and its interplay with other, relevant factors.  The circuit court found that if it allowed HB 2009 to take effect on June 17, 2021, Respondents "will have to forego many of their regular representational activities and redirect precious resources toward new methods of collecting union dues."  That, combined with the likelihood (in the circuit court's view)

---

[69] *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 2948, pp. 129–130 (2d ed. 1995) (emphasis added; footnotes omitted)).

[70] Respondents contend this case closely resembles a 1998 decision of the Federal Court of Appeals for the Sixth Circuit, *Toledo Area AFL-CIO Council v. Pizza*, 154 F.3d 307, 323 (6th Cir. 1998).  There, the court upheld the issuance of an order preliminarily enjoining a portion of Ohio's Campaign Finance Reform Act, which barred public employers from administering a wage checkoff by which public employees donated a portion of their wages to political causes.  In that case, the law indubitably affected collective bargaining agreements in effect at the time the challenged law became effective. *Id*. at 323.  In fact, the state even conceded it.  *Id*. at 324.

[71] *Cf*. Syl. Pt. 5, *Virginian Exp. Coal Co. v. Rowland Land Co.*, 100 W. Va. 559, 131 S.E. 253 (1926) ("The fundamentals of a legal 'contract' are competent parties, legal subject matter, valuable consideration and mutual assent. There can be no contract if there is one of these essential elements upon which the minds of the parties are not in agreement.").

that HB 2009 will violate certain of Respondents' constitutional rights established that Respondents faced an "irreparable and severe injury" if the preliminary injunction did not issue.

Respondents' evidence in support of their claim of irreparable harm is thin, at best. Fred Albert, President of the AFTWV, testified that between the day HB 2009 was passed—March 19, 2021—and the day of the preliminary injunction hearing—June 14, 2021—his organization had successfully transitioned thirty percent of the membership to alternative means of paying dues.[72] And, Elaine Harris, an International Staff Representative of the CWA District 2-13, testified that her organization is looking at alternative payment mechanisms. None had been implemented by the time of the preliminary injunction hearing. Ms. Harris testified that she anticipates that members will be reluctant to move to alternative methods of paying their dues because they won't want to provide credit card or bank account information. Ms. Harris was adamant, though, that members do want to pay their dues. In their affidavits, Ms. Harris and Mr. Albert both *opine* that if HB 2009 is allowed to take effect and deductions of dues ends, their organizations and their members will suffer substantial and irreparable harm.[73]

---

[72] We are not sure how to square this testimony with Mr. Albert's earlier testimony that ninety-eight percent of his organization's dues are collected through payroll deductions.

[73] James White, Executive Director of the WVSSPA, stated the same in his affidavit: "It is my opinion that if county boards of education are required to cease collection of dues as of June 17, 2021, or the effective date of House Bill 2009, WVSSPA will suffer

29

Respondent Corporal J.W. Smith, Jr., stated in his affidavit that it was his "desire that the paycheck deduction of [his] dues continue," because the "practice has been a convenience for [him] throughout" his employment by the State of West Virginia. In their affidavits, two more public employees stated the same: deduction of dues from their paycheck is a "convenience" that they want to continue.[74]

"A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."[75] Mr. Albert's organization was able to transition one-third of its members from wage deductions to alternative means of paying their dues in only three months. This demonstrates that change is possible in a relatively short timeframe and cuts strongly against the circuit's finding that any harm caused by HB 2009 will be permanent. While Ms. Harris believes that her membership will balk at an alternative method of dues payment, it does not appear that they have been offered one, before. So, while Ms. Harris's concerns may be heartfelt, they are speculative. And, while Cpl. Smith and the other

---

substantial and irreparable economic harm. Moreover, its members will suffer substantial and irreparable harm."

[74] Like Mr. Albert and Ms. White, these employees also opine that if collection of dues by paycheck deduction cease, then there will be "a substantial increase in the numbers of members who become delinquent in the payment of their dues."

[75] *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004).

affiants find it convenient to pay their dues by wage deduction, the end of a convenience would not appear to be an *irreparable* harm.

Regardless of whether the circuit court clearly erred when it found that Respondents are likely to suffer irreparable harm without the preliminary injunction, that finding alone would not mandate issuance of the preliminary injunction. That finding exists in flexible interplay with the other factors used to determine whether to grant a preliminary injunction—most importantly, Respondents' likelihood of success on the merits of their claims.

Respondents claim that HB 2009 violates certain constitutional rights. But, Respondents have not directed the Court to any relevant authority supportive of their claim that HB 2009 violates their speech, associational, and equal protection rights. And, Respondents have not made a clear showing of the foundation of their contract clause claim. A court must consider "[e]very reasonable construction [of a legislative enactment] in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question."[76] The circumstances of this case—"the nature of the controversy,"[77] (a demanding constitutional challenge) and "the

---

[76] Syl. Pt. 1, in part, *State ex rel. Appalachian Power Co.*, 149 W. Va. at 740, 143 S.E.2d at 351.

[77] Syl. Pt. 4, in part, *Baker*, 112 W. Va. at 263, 164 S.E. at 154.

31

object for which the injunction is being sought"[78] (delayed enforcement of HB 2009 absent a showing from Respondents that they are likely to succeed on the merits of their constitutional claims)—called for the circuit court to deny injunctive relief to Respondents. The court abused its discretion when it did not. So, the circuit court's order must be reversed, and the case remanded for further proceedings.

## IV. CONCLUSION

For the reasons discussed above, the circuit court abused its discretion in granting the preliminary injunction. So, we reverse the circuit court's order of June 16, 2021, dissolve the preliminary injunction, and remand the case for further proceedings.

**REVERSED AND REMANDED**

---

[78] *Id.*